IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AZURE MITCHELL,

                *Plaintiff*,

    v.

OSA GLOBAL, LLC,

                *Defendant*.

Civil Action No. 2:25-cv-1950

Hon. William S. Stickman IV

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Azure Mitchell ("Mitchell") brings the following claims against her former employer, Defendant OSA Global, LLC ("OSA"):  Count I - discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"); Count II – hostile work environment in violation of Title VII; and Count III – retaliation in violation of Title VII and the ADEA.  (ECF No. 1).  OSA filed a motion to dismiss arguing that Mitchell's suit is untimely because she did not file it within 90 days of receiving the Equal Employment Opportunity Commission's ("EEOC") August 4, 2025, notice of right-to-sue.  (ECF No. 7).  For the following reasons, the Court will grant OSA's motion.

## I.  FACTUAL BACKGROUND

Mitchell began full-time employment with OSA as an armed guard supervisor around October 2024.  Her duties included supervising other guards, ensuring adherence to procedures, and managing staffing shortages for OSA's security contracts with the Housing Authority of the City of Pittsburgh ("HACP").  (ECF No 1, p. 4).

1

On December 7, 2024, two security guards scheduled to work at 2541 Chauncey Drive, Apt. 232, Pittsburgh, PA 15219 (the "Chauncey Location"), failed to report for their shifts.  The Chauncey Location was the most dangerous location for which OSA provided security, and the use of bulletproof vests was standard protocol for guards assigned to that location.  According to Mitchell, OSA's standard procedure when she could not find guard coverage was for the next supervisor scheduled to begin their shift to fill the vacancy.   The next scheduled supervisor was Midrow Leondre ("Leondre"), a younger male employee.   Leondre refused to cover the Chauncey Location and Mitchell was unable to reach her supervisor, Robert Ford ("Ford"), to resolve the situation.  (*Id*. at 4-5).

Mitchell then entered a room where approximately five younger male colleagues were gathered, including Leondre and another one of Mitchell's superiors, Corporal Ronmel Hunt ("Hunt").  She explained the staffing issue and why she believed she was not the appropriate person to cover the shift.  Part of her rationale was that OSA had failed to provide her with a bulletproof vest and holster.  Apparently, her colleagues "began to taunt and harass her in a condescending manner," and said things like, "You think because you are a girl that you don't need to go up there."; "You are nobody and no one likes you."; "You're gone."; and that only the male supervisors were "real supervisors."  Hunt then allegedly made "a physical gesture as if he were going to strike [ ] Mitchell, causing her to flinch in fear of being hit."  (*Id*. at 5-6).  Hunt physically blocked the doorway, which prevented her from leaving.  When Mitchell pleaded with him to let her leave, Hunt shouted, "You black bitch, I'm on the phone."  (*Id*. at 6).  The other men held Hunt back, and she escaped from the room.  (*Id*.).  Mitchell immediately called Ford to report the situation, part of which he witnessed on FaceTime.  Ford informed her that someone would call her the next day.  (*Id*.).

On December 8, 2024, OSA's Director of Operations Amy McKnight ("McKnight") called Mitchell, and Mitchell recounted the prior day's events. McKnight said that she would document the incident and that OSA would conduct an investigation. On December 27, 2024, McKnight called Mitchell and informed her that the investigation was complete, and that Mitchell was being terminated for failure to report to work – i.e., for not covering the shift at the Chauncey Location on December 7, 2024. (*Id*. at 6-7).

## II.      STANDARD OF REVIEW

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable

inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* FED. R. CIV. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Thus, the EEOC documents at ECF Nos. 7-1 (Charge of Discrimination at 533-2025-00826), 7-2 (Notice of Right-to-Sue at Charge No. 533-2025-00826), and 13-1 (Intake Interview at Charge No. 533-2025-00826) may be considered by the Court in resolving OSA's motion, either as undisputed documents referenced in the complaint or central to Mitchell's claims, or as information that is a matter of public record, without converting the motion to dismiss to one for

summary judgment.  *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. 2001) ("It is clear to us that under the applicable legal standard we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one [for] summary judgment."); *see also McNaney v. Sampson & Morris Grp., Inc.*, No. 2:21-CV-1809, 2022 WL 1017388, at *2 (W.D. Pa. Apr. 5, 2022) ("Federal courts have held that EEOC documents attached to a defendant's motion to dismiss are reviewable without converting the motion to one for summary judgment because they are not subject to dispute as to their authenticity and issues relating to exhaustion and post-exhaustion timeliness form essential parts of a plaintiff's claims.").  At the same time, the Court recognizes that:

> The EEOC Charge Form and the Intake Questionnaire serve different purposes. An Intake Questionnaire facilitates "pre-charge filing counseling" and allows the Commission to determine whether it has jurisdiction to pursue a charge. *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 1159, 170 L.Ed.2d 10 (2008).[ ] Moreover, the Intake Questionnaire is not shared with the employer during the pendency of the EEOC investigation. On the other hand, an EEOC Charge Form serves to define the scope of the Commission's investigation and to notify the defendant of the charges against it. *See* 42 U.S.C. § 2000e–5(b) (requiring the Commission to serve notice of the charge on the employer against whom it is made within ten days, and to conduct an investigation); *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359–60, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (stating the same). A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer.

*Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010).  Thus, it will assign ECF No. 13-1 (Intake Interview at Charge No. 533-2025-00826) the weight it is due.

### III.    ANALYSIS

Before a plaintiff may file a claim under Title VII or the ADEA, she must exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  42 U.S.C. § 2000e-5(e)(1); *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 595 (1981); 29 U.S.C. § 626(e).  If the EEOC decides it will not pursue a plaintiff's charge, it "shall ... notify" the plaintiff.  42 U.S.C. § 2000e-5(f)(1).  A claim under Title VII or the ADEA must be brought within 90 days of receiving the right-to-sue notice.  42 U.S.C. § 2000e–5(f)(1); *McGovern v. City of Phila.*, 554 F.3d 114, 115 n.1 (3d Cir. 2009); 29 U.S.C. § 626(e); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383 n.11 (3d Cir. 2007).

In her complaint, Mitchell alleges that she filed a charge of discrimination with the EEOC on September 16, 2025, and that a 90-day right-to-sue notice was received on September 17, 2025, thus making this action timely.  (ECF No. 1).  On the other hand, OSA argues that Mitchell's prior EEOC charge bearing Charge No. 533-2025-00826 ("First Charge") contained allegations regarding the same events pled in her complaint, and that the EEOC issued a right-to-sue notice with respect to the First Charge on August 4, 2025.  Plaintiff received the right-to-sue notice on August 13, 2025.  OSA contends that Mitchell's complaint was untimely because the September 17, 2025, right-to-sue notice did not extend or restart the statutory period for Mitchell to file suit as it was based on the same allegations contained in the First Charge.

A plaintiff cannot revive claims stemming from an expired administrative charge in a ripe charge.  *See Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per curiam) (finding suit time barred where plaintiff obtained a second right-to-sue letter based on facts identical to an expired, initial right-to-sue letter); *see also Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 391 (1st Cir. 2014) (plaintiff's Title VII claim filed after the 90-

6

day deadline could not be "resuscitated by the filing of a second administrative charge"); *Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1186 (10th Cir. 2006) ("lapsed claims are not revived by including them in a second EEOC charge and restarting the process"); *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (barring plaintiff from filing suit based on second EEOC charge that replicated an untimely charge).  Allowing plaintiffs to renew expired claims in a ripe administrative charge would render "the time limitations of 42 U.S.C. § 2000e-5(f)(1) ... meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Lo*, 787 F.2d at 828.  Thus, whether the present action is time barred must be determined with reference to the First Charge and the complaint.

"The test for exhaustion is 'whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom.'" *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)).  The Court must determine whether the claims presented in the complaint are reasonably related to those in the First Charge by assessing "whether there is a close nexus between the facts in the administrative charge and those in the judicial complaint." *Id.* (cleaned up); *see also Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978).  The question is whether "a reasonable investigation by the EEOC would have encompassed the … claims." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).  Failure to include an allegation in the EEOC complaint is not fatal, as long as the acts alleged in the subsequent lawsuit are fairly within the scope of the prior EEOC complaint or the related EEOC investigation. *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *Antol*, 82 F.3d at 1295; *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir.

2021). To determine whether a claim fairly falls within the EEOC complaint or related investigation, courts consider (1) whether the claim advances the same theory of discrimination as the original charge and (2) whether the claim arises from the same set of facts that support the original charge. *Simko*, 992 F.3d at 209 (collecting cases).

The First Charge describes the relevant events as:

> I [was] hired on or about November 10, 2024, and was then transitioned to a new company where my last job title was an armed officer security supervisor. On December 27, 2024, I was told by another supervisor that I had to go to a site, but I was not properly equipped and declined. Later, I was completing work and about to check out where I was approached by a group of 5 men. 4 I know are supervisors and one is a similarly situated officer. It was originally a conversation about earlier, but it turned into an argument where I was locked in a room with them making threatening gestures. I was told "You can just shut up", "Because you're a girl you feel you don't have to do anything", and "No one here likes you; you can ask the other supervisors." I informed my supervisor and a higher up Lieutenant Rob Ford, who is also the uncle of the 5 men. On or about January 1, 2025, a message was sent to me saying I was terminated.

(ECF No. 7-1, p. 2). It further states, "I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I was terminated because I reported my colleagues and didn't go to the site as they wanted me to since it felt unsafe for me to do so." (ECF No. 7-1, p. 2). Mitchell's year of birth on the First Charge is listed as 1975.

According to Mitchell, "the First Charge omitted key facts which in turn prevented the EEOC from conducting any reasonable investigation into [her] claims for age, sex, and race discrimination, hostile work environment, and retaliation for opposing such unlawful conduct." (ECF No. 11, p. 2). Mitchell contends these facts were omitted from the First Charge:

> (1) Plaintiff is 50 years old and African American; (2) Plaintiff was to be provided with a bulletproof vest and holster for her weapon, which were necessary when providing security at the Chauncey Location due to its reputation of being the most dangerous facility at which Defendant provided security services; (3) Plaintiff was not scheduled to report to the Chauncey location on December 7, 2024 and this shift should have been covered by a male supervisor, Midrow Leondre; (4) the five male colleagues were younger than Plaintiff; (5) the

8

statements from the 5 male colleagues that only the male supervisors were the "real supervisors"; (6) a gesture made by Corporal Ronmel Hunt at Plaintiff insinuating that he was going to hit Plaintiff; (7) Mr. Hunt calling Robert Ford on FaceTime during the interaction with the 5 male colleagues so that Mr. Ford could participate in the harassing conduct; (8) Mr. Hunt blocking the exit door of the room, confining Plaintiff therein; (9) Mr. Hunt stating to Plaintiff, "you black bitch, I'm on the phone"; (10) Mr. Hunt having to be physically restrained by those male colleagues present as it was clear he intended to physically assault Plaintiff; and (11) Plaintiff called Amy McKnight, Defendant's director of operations, to report that she believed she was being harassed as a result of her gender and age. ECF No. 1, ¶¶ 12, 15-17, 19-22, 25, 27-32, 34.

(*Id*. at 8-9).

The Court disagrees and holds that the complaint falls squarely within the scope of Mitchell's First Charge for discrimination and retaliation, relying on similar facts involving one operative incident that occurred on December 27, 2024. Mitchell merely adds more granular detail as to what occurred on December 27, 2024, in her complaint. There are no separate and distinct events from the December 27, 2024, incident set forth in her complaint. The variations in details as to what occurred on December 27, 2024, and the theories of liability that they may support, do not remove Mitchell's claims from the scope of the First Charge and the EEOC's investigation. The addition of other factual details related to the December 27, 2024, incident in the complaint, which further Mitchell's various theories of liability, do not remove Mitchell's claims from the scope of the First Charge. Mitchell undoubtedly believed she was the victim of discrimination and retaliation when she filed her First Charge. The First Charge, complete with the statement, "I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I was terminated because I reported my colleagues and didn't go to the site as they wanted me to since it felt unsafe for me to do so" (ECF No. 7-1, p. 2), and her narrative description of the events that occurred on December 27, 2024, fulfilled the purpose

of putting the EEOC on notice of her relevant claims.  A reasonable investigation by the EEOC would have encompassed Mitchell's termination and the events of December 27, 2024.

An EEOC charge is a signed statement asserting that an organization engaged in employment discrimination and requests that the EEOC take remedial action.  *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008).  The United States Court of Appeals for the Third Circuit has instructed that the scope of an EEOC charge is to be liberally construed.  *See Hicks*, 572 F.2d at 965 ("[C]harges are most often drafted by one who is not well versed in the art of legal description.... [T]he scope of the original charge should be liberally construed.").  "[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute."  *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (citing *Hicks*, 572 F.2d at 963).  Further, "an EEOC charge is not required to contain any legal conclusions, '[i]t is up to the EEOC, not [the plaintiff], to investigate whether and under what legal theories discrimination might have occurred.'"  *Houle v. Walmart Inc.*, 447 F. Supp. 3d 261, 276 (M.D. Pa. 2020) (quoting *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 302 (3d Cir. 2010)).  The original charge provides the EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices," which investigators may well "disclose, as in this instance, illegal practices other than those listed in the charge."  *E.E.O.C. v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir. 1975)

As to Count I (i.e., age and sex discrimination (ECF No. 1, pp. 7-8)), Mitchell claimed in her First Charge that she was discriminated against based on her sex.  She specifically refers to gender-based derogatory remarks and threating treatment by other male supervisors.  Given that the events of December 27, 2024, form the entire basis of her complaint, and that her date of birth was listed on the First Charge, Mitchell's age-based claim of discrimination could also

10

reasonably be expected to grow out of the EEOC's investigation into her general claim of discrimination under Title VII in the First Charge.

Next, as to Count II (i.e., hostile work environment based on her sex and race (*Id*. at 10-16)), her claims are clearly within the scope of the EEOC's investigation into the First Charge. Mitchell claimed that she was locked in a room and subjected to threatening gestures and derogatory remarks regarding her gender. The EEOC's investigation would have adduced the respective race and sex of the involved parties, including Mitchell's, and it would have reasonably included an inquiry into whether OSA was a hostile environment. As OSA correctly notes, one single event, like what allegedly occurred to Mitchell on December 27, 2024, with her colleagues, can create a hostile work environment if extreme enough. *See Castleberry v. STI Group*, 863 F.3d 259, 264-65 (3d. 2017).

Lastly, as to Count III (i.e., retaliation (ECF No 1, pp. 16-20)), the basis for this claim is unquestionably asserted in Mitchell's EEOC charge. She claimed in the First Charge that her employment was terminated after she filed a formal complaint of discrimination/harassment related to the events of December 27, 2024, to her supervisor.

The Court concludes that all of the claims Mitchell raises in her complaint are reasonably within the scope of the First Charge and the EEOC investigation. Consequently, it holds that the 90-day filing period began upon Mitchell's receipt of the August 4, 2025, right-to-sue notice. She did not file suit until December 15, 2025. Therefore, her complaint is time barred.

11

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant OSA's motion by order of court to follow.

BY THE COURT:


s/  William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE


April 30, 2026
Dated

12